UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LEONERO GRULLON,                                    Docket No.: 16-CV-09190(ER)
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class*,

                              Plaintiff,

               -against-

560 THIRD AVENUE GROCERY CORP.
d/b/a DUKE'S,
239 PARK AVENUE SOUTH ASSOCIATES, LLC
d/b/a BIG DADDY'S,
BIG DADDY'S II LLC d/b/a BIG DADDY'S
JOHN DOE CORP. d/b/a CITY CRAB SHACK
DEAN PALIN,
SIMON OREN,
ANDREW W. SILVERMAN,
and GERALD J. SHALLO,

                              Defendants.
-----------------------------------------------------------------X

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR A PROTECTIVE ORDER, CORRECTIVE ACTION AND SANCTIONS
AGAINST PLAINTIFF'S COUNSEL AND PLAINTIFF FOR IMPROPER
SOLICITATION OF DEFENDANTS' EMPLOYEES

Joseph M. Labuda, Esq.
Matthew A. Brown, Esq.
Milman Labuda Law Group, PLLC
Attorneys for Defendants
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
(516) 328-8899

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

PROCEDURAL HISTORY .................................................................................... 2

ARGUMENT ........................................................................................................ 3

POINT I
LEE LITIGATION GROUP IS NOT PERMITTED TO SOLICIT CLIENTS VIA REAL-
TIME SOCIAL MEDIA COMMUNICATION ......................................................... 3

POINT II
LEE LTIGATION GROUP ENGAGED IN ABUSIVE CONDUCT IN
COMMUNICATION WITH PROSPECTIVE CLASS MEMBERS BY SENDING A
MISLEADING SOLICITATION VIA SOCIAL MEDIA MESSAGE ................................... 5

POINT III
LEE LITIGATION GROUP ENGAGED IN IMPROPER SOLICITATION BY FAILING
TO INCLUDE THE TERMS "ATTORNEY ADVERTISING" IN ITS SOCIAL MEDIA
MESSAGE SUBJECT LINE AND/OR CONTENTS ............................................... 10

CONCLUSION ................................................................................................. 10

## PRELIMINARY STATEMENT

Defendants, 560 Third Avenue Grocery Corp. d/b/a Duke's ("Duke's"), 239 Park Avenue South Associates, LLC d/b/a Big Daddy's ("Big Daddy's I"), Big Daddy's II LLC d/b/a Big Daddy's ("Big Daddy's II"), John Doe Corp. d/b/a City Crab Shack ("City Crab Shack"), Dean Palin ("Palin"), Simon Oren ("Oren"), Andrew W. Silverman ("Silverman"), and Gerald J. Shallo ("Shallo") (collectively referred to as "Defendants") submit this memorandum of law in support of their motion for a protective order, corrective action and sanctions to be issued against Plaintiff Leonero Grullon ("Grullon") and his counsel Lee Litigation Group, PLLC ("Lee Litigation Group") for its improper solicitation with the putative class.

On January 9, 2017, Defendants' filed a request for a pre-motion conference regarding their motion to dismiss Plaintiff's untimely Fair Labor Standards Act ("FLSA") claims. In short order, on January 11, 2017, Lee Litigation Group sent a misleading solicitation via real-time/interactive computer-accessed social media message to Defendants' current and former employees. This message was improper since Plaintiff's counsel is not permitted to contact current and former employees via real-time/interactive computer-accessed communications. It also contained misleading information, insinuated that Defendants were guilty of failing to pay employees for all hours worked by adjusting timesheets, and failed to include the term "ATTORNEY ADVERTISING" therein or in the subject line. In essence, the solicitation was Lee Litigation Group's attempt to troll for other individuals who may have timely FLSA claims so that it does not have to litigate Plaintiff's claims in the New York State Court system.[1]

---

[1] Defendants do not publicize their employees' contact information and/or social media profiles and are precluded from doing so under N.Y. Labor Law 203-d.  Therefore, Defendants are suspicious regarding how Plaintiff's counsel obtained this information.  Accordingly, Plaintiff's counsel should be directed to disclose to Defendants and the Court how it obtained access to social media profiles for Defendants' current and former employees.

Accordingly, the Court should enter an Order directing that, (1) Lee Litigation Group, PLLC cease all communications, whether solicitation or otherwise, with Defendants current and former employees unless approved by this Court; (2) Lee Litigation Group, PLLC disclose how it obtained access to social media profiles for Defendants' current and former employees and other relevant information; (3) Lee Litigation Group, PLLC send a corrective message to all affected individuals indicating that they not contact them; (4) Lee Litigation Group, PLLC inform the Court of the names of any individuals who they sent a solicitation message to, the method of dissemination and whether they have had any further communication with any such individual; (5) Lee Litigation Group, PLLC is prohibited from representing any individuals in this or any other action who have received a solicitation message from its office; (6) Grullon is precluded from moving for collective and class action certification; and (7) Lee Litigation Group, PLLC pay Defendants' attorneys' fees associated with the instant motion; and (8) for such other and further relief as the Court deems just and proper.

## **PROCEDURAL HISTORY**

Grullon filed the instant action on November 28, 2016. [Dkt. #1]. In response, Defendants filed a request for a pre-motion conference regarding their forthcoming motion to dismiss the Complaint on January 9, 2017. [Dkt. #26]. Defendants' intend to file the motion since, *inter alia*, Grullon's FLSA claims are untimely, which would necessarily require the Court to decline supplemental jurisdiction of the remaining claims. Id.[2]

Facing imminent dismissal, on January 11, 2017 Lee Litigation Group improperly sent a misleading real-time/interactive computer-accessed social media message to Defendants' current

---

[2] The statute of limitations for an FLSA claim is two years, unless the violation is "willful," in which case it is three years. 29 U.S.C. § 255(a). Since Grullon alleges that his employment ended in March 2013 [Dkt. #1, ¶ 23], his FLSA claim is untimely even if a three (3) year statute of limitations applies.

and former employees to solicit them to join the lawsuit. (See Brown Dec. "Exhibit A" – Zucker Dec.). Since the improper solicitation came to Defendants' attention almost immediately, they filed a request for a pre-motion conference regarding the instant motion on January 12, 2017. [Dkt. #28]. On the same date Grullon filed his response to Defendant's first request for a pre-motion conference, but failed to address the solicitation issue. [Dkt. #29].

Upon review of Defendants' letter, the Court directed Grullon to respond to Defendant's request for a pre-motion conference regarding this motion no later than 5 p.m. on Friday, January 20, 2017. [Dkt. #30]. Grullon filed his response at 9:57 a.m. on January 20, 2017. [Dkt. #31].

Thereafter, the Court granted Defendants' request for a pre-motion conference regarding this motion, but denied the other request without prejudice pending court-ordered mediation. [Dkt. #33].[3] Accordingly, the Court held a pre-motion conference on February 16, 2017, setting a briefing schedule for the instant motion.

## ARGUMENT

### POINT I
### LEE LITIGATION GROUP IS NOT PERMITTED TO SOLICIT CLIENTS VIA REAL-TIME SOCIAL MEDIA COMMUNICATION

Lee Litigation Group has violated New York's Rules of Professional Conduct with respect to real-time communication with Defendants' current and former employees. Under New York's Rules of Professional Conduct, "[a] lawyer shall not engage in solicitation . . . by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client . . . ." N.Y. St. R.P.C. Rule 7.3 (emphasis added).

Here, Lee Litigation Group sent real-time/interactive computer-accessed message to potentially hundreds of current and former employees of Defendants through Facebook's instant

---

[3] Although a mediation session was held on February 28, 2017, the case was not resolved due to Plaintiff's refusal to settle his claims on an individual basis. (Brown Dec. ¶ 2).

3

messaging service where individuals conduct live conversations. (See Brown Dec. "Exhibit A" – Zucker Dec.).

In response to Defendants' pre-motion letter, Lee Litigation Group argued that its communication was permissible since it was similar to an e-mail and/or social media post (i.e. not a real-time communication). However, Lee Litigation Group's argument is both factually and legally incorrect. Official Comment 9 to Rule 7.3 provides that "[i]nstant messaging, chat rooms, and other similar types of conversational computer-accessed communication are considered to be real-time or interactive communication." This real-time solicitation "poses the risk that a lawyer, who is trained in the arts of advocacy and persuasion, may pressure a potential client to hire the lawyer without adequate consideration." N.Y. St. R.P.C. Rule 7.3, Official Comment 9. Thus, any similar messaging on Facebook or any other social media platform is prohibited by the rule. Additionally, since Defendants' current and former employees who were contacted do not otherwise fall into the exception to the rule (i.e. close friend, relative, former client or existing client of Lee Litigation Group), Lee Litigation Group has violated this rule and engaged in improper contact.

Lee Litigation Group also argued that pursuant to NYSBA Ethics Opinion 843 (2010) it was within its ethical bounds to "access and review" social media profiles for Defendants' current and former employees in order to "secure information for use in the lawsuit." However, in this instance, Lee Litigation Group went well beyond merely accessing and/or reviewing social media pages of potential parties and commenced live conversations with potential parties to this case, overstepping the permissible boundaries set forth by Ethics Opinion 843. Lee Litigation Group actually engaged in soliciting Defendants current and former employees to speak with the firm about joining the lawsuit.

**POINT II**

**LEE LTIGATION GROUP ENGAGED IN ABUSIVE CONDUCT IN
COMMUNICATION WITH PROSPECTIVE CLASS MEMBERS BY SENDING A
MISLEADING SOLICITATION VIA SOCIAL MEDIA MESSAGE**

a.   <u>Lee Litigation Group's Message to Defendants' Current And Former Employees
Was Misleading</u>

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89 (1981). "The potential abuses associated with communications to class members [include] heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding …[and] unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." <u>Id</u>. at 101 (internal citations and quotations omitted).

"Examples of abusive conduct by parties to a class action in communicating with prospective class members that may be subject to judicial remedies include providing false, misleading or intimidating information, or other misconduct such as concealing material information or conducting communications with a represented party." <u>Gordon v. Kaleida</u> <u>Health</u>, 737 F. Supp. 2d 91, 96-97 (W.D.N.Y. 2010). Misleading content is also prohibited by New York State Professional Conduct Rule 7.1(a) with respect to advertising. N.Y. St. R.P.C. Rule 7.1(a)

In this case, Lee Litigation Group sent a misleading message to Defendants' current and former employees to solicit them to join this lawsuit. The message is misleading for multiple reasons. First, the message misleads the recipients that Defendants "willfully adjusted employees' timesheets and failed to pay their employees for all of their hours worked," and that

"[a]ffected employees" exist. By insinuating that Defendants are guilty of these practices, the message also constitutes defamation. Second, the message misleads recipients to believe that they are helping with an "investigation." The message is simply a back-handed way of soliciting under the guise of an investigation. In reality, it is a poor attempt to mask its real purpose – to troll for new plaintiffs to save the case from dismissal and a forthcoming remand to New York State Court (as discussed above).[4]

**b.**   **The Court Should Not Permit Lee Litigation Group to Contact Defendants' Current And Former Employees**

Lee Litigation Group's messages are exactly the types of communications which must be supervised by the Court. In fact, "[t]he need for a district court to ensure that all parties act fairly is especially great during the early stages of FLSA litigation.  Because formal notice to potential plaintiffs is sent only after conditional certification, 'pre-certification, ex parte communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.'" Agerbrink v. Model Serv. LLC, 2015 U.S. Dist. LEXIS 145563, 8-9 (S.D.N.Y. Oct. 27, 2015) quoting Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 921 (11th Cir. 2014). Since Plaintiff sent the solicitation to other employees besides Julie Zucker, he has in effect sent out class and collective action notices without this Court's approval. Indeed, Lee Litigation Group has circumvented the Court's role under 29 U.S.C. 216(b) in overseeing the collective action process.  The entire point of collective action notice is to allow the Court to control and approve the information sent to potential opt-ins.  See Gortat v. Capala Bros., 2010 U.S. Dist. LEXIS 88847, 7 (E.D.N.Y. Aug. 27, 2010); Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007). Similarly, a district court's authority under Rule 23(d) is

---

[4] As discussed above, the risk of persuasion to join the case as an opt-in or otherwise via real-time/interactive communication is contemplated by Rule 7.3 Official Comment 9. This is the exact conduct in which Lee Litigation Group has engaged.

not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class.  <u>In re Currency Conversion Fee Antitrust Litig.</u>, 361 F. Supp. 2d 237, 252-253 (S.D.N.Y. 2005).

Here, the Complaint contains FLSA collective action and Rule 23 class action allegations, which Lee Litigation Group seems intent on pursuing despite Grullon's untimely FLSA claims and lack of knowledge of Defendants' operations in the relevant statute of limitations period. In fact, after Defendants filed their pre-motion letter, C.K. Lee, the managing partner of Lee Litigation Group, called this office to inquire, *inter alia*, whether Defendants would consent to resolve the case on a class-wide basis. (Brown Dec. ¶ 1). Because Lee Litigation Group has already solicited Defendants' current and former employees, Grullon should be precluded from filing a motion for collective or class action. To permit him to solicit prior to a collective or class action being certified will provide him with multiple bites at attempting to obtain additional clients. Defendants' current and former employees should not be harassed with multiple notices about joining this case.

In his letter dated January 20, 2017, Plaintiff cites to three (3) cases from outside the Second Circuit for the proposition that social media contact, including solicitations, are permitted in FLSA cases. These cases are all inapposite. First, Plaintiff relies on <u>Gamble v. Boyd Gaming Corp.</u>, where the court declined to enjoin plaintiffs' counsel sought out class members by creating a passive website and posting advertisements via social media platforms. 2013 U.S. Dist. LEXIS 176378 (D. Nev. Nov. 20, 2013). In contrast, in the instant matter Lee Litigation Group's conduct is quite different – it proactively sent misleading information to putative class members using live interactive communication via Facebook messenger (and potentially other

social media platforms) in an effort to solicit them to join the case. Such communications are not akin to creating a website (where individuals could visit if they choose) or otherwise posting advertisements through which no live interactive communication is conducted where an attorney can use the power of persuasion on a putative class member.

Second, Plaintiff cites to <u>Smith v. Family Video Movie Club, Inc.</u>, where the court granted a motion to disseminate formal notice of a collective action although putative class members had already been solicited via Facebook. 2012 U.S. Dist. LEXIS 21935 (N.D. Ill. Feb. 22, 2012). The court in <u>Smith</u> simply dealt with whether to grant a motion for conditional certification of a collective action without specific details on the supposed solicitation since no motion for sanctions was filed. In contrast, here the issue before the Court deals with improper solicitations, not whether to conditionally certify a collective action in this matter.

Third, Plaintiff relies on <u>Frye v. Baptist Mem'l Hosp., Inc.</u>, where the court denied a request a ban on plaintiff's counsel launch of a website and mailing of letters to putative class members since it did not contain misleading information. 2008 U.S. Dist. LEXIS 41511 (W.D. Tenn. May 20, 2008). As above, this case is also similarly distinguishable. Lee Litigation Group used a misleading real-time interactive messaging to solicit putative class members to join the case, which is completely different from launching a non-interactive website and/or mailing letters which did not contain any misleading information.

Lee Litigation Group must be barred from any further communications with putative class members.

### c.  **Lee Litigation Group's Message Was Solely For Its Own Benefit And Was Not Sent For the Purpose of Obtaining Information Beneficial To Grullon**

Lee Litigation Group's so-called "investigation" was also improper since it solely benefitted Lee Litigation Group and not its client.

In its letter dated January 20, 2017, Lee Litigation Group cites to numerous sources to support its feeble argument that instant messaging was permissible since it sought information regarding claims asserted in the Complaint. However, none of these sources supports Lee Litigation Group's position and, in fact, all of these sources indicate that Lee Litigation Group's conduct was improper.

Most notably, Lee Litigation Group cites to NYSBA Committee on Professional Ethics Opinion #499 which permits communication with putative class members "for purpose of obtaining beneficial to his client …" (emphasis added). Moreover, Opinion #499 states, in pertinent part: "When the interests of a client will be served by enlisting the cooperation of others similarly situated, an attorney may solicit or participate in soliciting such cooperation, provided his motive is not to benefit himself. N.Y. State 124 (1970); See also, N.Y. State 449 (1976), N.Y. County 632 (1974), N.Y. City 717 (1948), ABA Inf. 1283 (1973) and ABA Inf. 1280 (1973).[5] Moreover, "[c]lass actions are no different … to the extent the ethics profession permit a lawyer to advance the legitimate interest of his client by soliciting the aid of others including potential members of the class. N.Y. State 499 (1978). (emphasis added).

In reality, Lee Litigation Group's instant message to Defendants' current and former employees violates Ethics Opinion #499. The true motive for the instant message was to generate more clients for Lee Litigation Group. There is no information that could possibly be "investigated" to save Grullon's untimely FLSA claims from dismissal. Lee Litigation Group is simply seeking additional individuals to join this case as opt-ins in order to increase attorneys'

---

[5] Lee Litigation Group cites to ethics opinions from other states and the ABA Standing Committee on Ethics and Professional Responsibility which have similar language to Ethics Opinion #499. These include Ore. Op. 232 (1972), Los Angeles Co. Op. (1966), and D.C. Op. 3 (undated), respectively indexed at 9793, 7833 and 8033, Maru, Giest of Bar Associates Ethics Opinions (1975).

fees. This is further evidenced by Lee Litigation Group's refusal to resolve Grullon's claims on an individual basis at the Court ordered mediation session.

## POINT III
### LEE LITIGATION GROUP ENGAGED IN IMPROPER SOLICITATION BY FAILING TO INCLUDE THE TERMS "ATTORNEY ADVERTISING" IN ITS SOCIAL MEDIA MESSAGE SUBJECT LINE AND/OR CONTENTS

Lee Litigation Group has also violated the New York State Rules of Professional Conduct with respect to advertising. Specifically, Rule 7.1(f) requires any electronic correspondence containing an advertisement from an attorney to include "ATTORNEY ADVERTISING" in the subject line.

In the instant message sent to Defendants' current and former employees on January 11, 2017, the notation for "ATTORNEY ADVERTISING" is neither in the message's contents or subject line. Accordingly, the message violates Rule 7.1(f). This notation is <u>not</u> in the solicitation message or its subject line.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully requests that their motion for sanctions and corrective measures be granted inasmuch as the Court enters an Order directing that, (1) Lee Litigation Group, PLLC cease all communications, whether solicitation or otherwise, with Defendants current and former employees unless approved by this Court; (2) Lee Litigation Group, PLLC disclose how it obtained access to social media profiles for Defendants' current and former employees and other relevant information; (3) Lee Litigation Group, PLLC send a corrective message to all affected individuals indicating that they not contact them; (4) Lee Litigation Group, PLLC inform the Court of the names of any individuals who they sent a solicitation message to, the method of dissemination and whether they have had any further communication with any such individual; (5) Lee Litigation Group, PLLC is prohibited from

representing any individuals in this or any other action who have received a solicitation message from its office; (6) Grullon is precluded from moving for collective and class action certification; and (7) Lee Litigation Group, PLLC pay Defendants' attorneys' fees associated with the instant motion; and (8) for such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
      March 13, 2017

                                            **MILMAN LABUDA LAW GROUP PLLC**

                                            /s/ Matthew A. Brown, Esq.
                                            Joseph M. Labuda, Esq.
                                            Matthew A. Brown, Esq.
                                            Attorneys for Defendants
                                            3000 Marcus Ave., Suite 3W8
                                            Lake Success, NY 11042
                                            (516) 328-8899